UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
WELLS FARGO BANK N.A., as Trustee for the
Certificateholders of Sovereign Commercial
Mortgage Securities Trust, 2007 C-1,
Commercial Mortgage Pass-Through          **MEMORANDUM AND ORDER**
Certificates, Series 2007-C1, acting by
and through WATERSTONE ASSET MANAGEMENT,   13 Civ. 1222 (NRB)
LLC, as Sub-Special Servicer,              13 Civ. 4313 (NRB)

                    Plaintiff,

          - against -

SOVEREIGN BANK, N.A.,

                    Defendant.
----------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


        Plaintiff Wells Fargo Bank, N.A. ("Wells" or "plaintiff"),

as Trustee of the Sovereign Commercial Mortgage Securities

Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates,

Series 2007-C1 (the "Trust"), acting by and through the Trust's

Sub-Special Servicer, Waterstone Asset Management, LLC

("Waterstone"), brings two related actions for breach of

contract and breach of warranty against defendant Sovereign

Bank, N.A. ("Sovereign" or "defendant").[1]  Both actions arise

out of a commercial mortgage-backed securities ("CMBS")

transaction involving two hundred and sixty-four mortgage loans

---

[1] Sovereign changed its name to Santander Bank, N.A. on October 17, 2013.
For purposes of this case, however, we refer to it as Sovereign.

worth over $1 billion.  The first action -- 13 Civ. 1222 (the "Enco Loan Action") -- pertains to one loan, while the second -- 13 Civ. 4313 (the "Five Loans Action") -- pertains to five. Plaintiff seeks the repurchase of these loans as a remedy for the various alleged breaches relating to them.

Presently before the Court are defendant's motion to dismiss and for summary judgment, and plaintiff's motions to amend the complaints to add additional claims.  Oral argument was held on the motions on August 14, 2014.[2]  For the reasons set forth below, we grant defendant's motion to dismiss and for summary judgment and deny plaintiff's motions to amend.

<u>BACKGROUND</u>[3]

I.    **The CMBS Transaction**

In this CMBS transaction, defendant sold two hundred and sixty-four loans to Morgan Stanley Capital I, Inc. ("Morgan Stanley") pursuant to a Mortgage Loan Purchase Agreement (the "MLPA").  The MLPA -- entered into by Sovereign as Seller and Morgan Stanley as Purchaser -- was executed on June 8, 2007 and

---

[2] References preceded by "Tr." refer to the transcript of oral argument.
[3] The following facts are derived from the Complaint ("ELC") and the proposed Amended Complaint ("ELPAC") in 13 Civ. 1222 (the "Enco Loan Action"); the Complaint ("FLC"), the Amended Complaint ("FLAC"), and the proposed Second Amended Complaint ("FLPSAC") in 13 Civ. 4313 (the "Five Loans Action"); the Declaration of Robert J. Malatak ("Malatak Decl.") and the exhibits annexed thereto; the Declaration of Paul D. Snyder ("Snyder Decl.") and the exhibits annexed thereto; and the Declaration of James B. McClernan ("McClernan Decl.") and the exhibits annexed thereto, including the Mortgage Loan Purchase Agreement ("MLPA") (Ex. E), the Pooling and Service Agreement ("PSA") (Ex. F), the Confidential Offering Memorandum ("COM") (Ex. C), and the Preliminary Confidential Offering Memorandum ("pre-COM") (Ex. D).

had a closing date of June 21, 2007.  Once the loans were sold to Morgan Stanley, they were pooled into a trust (the "Trust") and sold and assigned to Wells, as Trustee, pursuant to a Pooling and Service Agreement (the "PSA").  PSA § 2.01.  The PSA, which was executed on June 1, 2007 and had a closing date of June 21, 2007, was entered into by, among others, Sovereign (as Special Servicer), Morgan Stanley (as Depositor), and Wells (as Trustee, Paying Agent, and Custodian).  As the governing documents in the CMBS transaction, the MLPA and PSA are the operative contracts at issue in these cases.

## II.  Disclosure of Second Mortgage Loans

Once the Trust was created, shares of the mortgage loan pool were sold to investors as certificates.  In evaluating whether to purchase these certificates, which were divided into different classes, the investors -- known as certificateholders -- had access to not only the MLPA and PSA, but also a Confidential Offering Memorandum ("COM") prepared by Sovereign and Morgan Stanley.  See COM at iv.  The COM contained extensive information about the offered certificates as well as the mortgage loans underlying them.

Among the information disclosed in the COM were details about certain mortgage loans whose properties secured second mortgages not held by the Trust.  This information was

disclosed in several places in the COM,[4] most notably for present purposes the Mortgage Loan Schedule attached to the COM. Footnote 5 of the Mortgage Loan Schedule provides the following data about the six mortgage loans at issue in this litigation:

> With respect to Mortgage Loan No. 60 [(the "Caroline Arms Loan")], 6457 Fort Caroline Road, the Borrower has $1,025,000 of additional secured subordinate financing.
> With respect to Mortgage Loan No. 69 [(the "Linden Loan")], 1975 Linden Boulevard, the Borrower has $120,000 of additional secured subordinate financing. . . .
> With respect to Mortgage Loan No. 124 [(the "Magnolia Terrace Loan")], 509 Magnolia Drive, the Borrower has a subordinate second lien in the amount of $475,000 held by the Housing Finance Authority of Leon County, Florida. . . .
> With respect to Mortgage Loan No. 226 [(the "Enco Loan")], 1720 East Tiffany Drive, the Borrower has $170,000 of secured financing in the form of a second lien, which is payable to Sovereign Bank.
> With respect to Mortgage Loan No. 252 [(the "Grand Loan")], 69-53/57 Grand Avenue, the Mortgaged Property also secures two secured subordinate mortgages, one in the amount of $460,000 and $370,000, respectively.

---

[4] Pages 4 and 54 of the COM state that "several Mortgaged Properties also secure or may secure additional subordinate indebtedness incurred by the related Borrower or to which the related Borrowers interest in the Mortgaged Property is subject, which subordinated indebtedness is not part of the Trust Fund." COM at 4, 54. Pages 13 and 41 state: "We are aware that twelve (12) Mortgage Loans, representing approximately 9.0% of the Initial Pool Balance . . . currently have additional second lien mortgages or lines of credit in place that are secured on a subordinate basis by the related Mortgaged Property." Id. at 13, 41. These same disclosures were made in a preliminary COM (the "pre-COM") dated May 24, 2007.

> With respect to Mortgage Loan No. 4
> [(the "Marina Palms Loan")], The Marina
> Palms Apartments, the Borrower has
> mezzanine financing in the amount of
> $3,000,000.

COM Ex. A-1, n. 5.[5]

The MLPA and PSA also contain copies of the Mortgage Loan Schedule. In those copies, however, the footnote number "5" appears in the same place (in the top row by the column titled "Cut-Off Date Balance"), but the text of the footnote is missing. Due to an error by Sovereign and/or Morgan Stanley, footnote numbers 1, 5, 9, 10, 12, and 18 are included, but their underlying text is not.[6] McClernan Decl. ¶ 15.

## III. Alleged Breaches of the Representations and Warranties

In the MLPA, Sovereign made a number of Representations and Warranties ("Reps") concerning, among other things, the origination, quality, servicing, and default status of the mortgages as of the closing date. Three of these Reps -- 18, 10, and 7 -- are relevant to the present actions.

Rep 18 provides, in pertinent part: "No Mortgaged Property secures any mortgage loan not represented in the Mortgaged Loan Schedule; . . . [N]o mortgaged loan is secured by property that secures another mortgage loan other than one or more Mortgage

---

[5] Identical disclosures were made in the pre-COM as well as the computer disk that was placed in the inside back cover of the COM (the "COM disk"). McClernan Decl. ¶ 4, 9.
[6] The copies of the Mortgage Loan Schedule attached to the MLPA and PSA contain a footnote 19, which is not contained in the copy attached to the COM, and that is the only footnote whose text is not missing.

Loans as shown on the Mortgage Loan Schedule." MLPA Ex. B ¶ 18.

Rep. 10 provides, in pertinent part: "The origination, servicing and collection practices used by [Sovereign] . . . with respect to such mortgage loans have been in all material respects legal, proper and prudent and have met customary industry standards." Id. ¶ 10.

Finally, Rep. 7 provides, in pertinent part: "There exists no material default, breach, violation or event of acceleration (and, to [Sovereign's] knowledge, no event that, with the passage of time or the giving of notice, or both, would constitute any of the foregoing) under the documents evidencing or securing the Mortgage Loan . . . ." Id. ¶ 7.

Plaintiff alleges that defendant breached some or all of these Reps with respect to the mortgage loans at issue in these actions.

A. The Enco Loan Action

The current complaint in the Enco Loan Action alleges that defendant breached Rep 18 by not disclosing in the MLPA's Mortgage Loan Schedule that the property securing the Enco Loan was encumbered by a second mortgage in the amount of $170,000.[7]

---

[7] The Enco Loan had an original principal balance ("OPB") of $1,330,000.  ELC ¶ 19.

In the proposed Amended Complaint, plaintiff seeks to add an additional cause of action for breach of Rep 10 due to numerous alleged flaws with the origination and servicing of the Enco Loan.

### B. The Five Loans Action

The Five Loans Action, as the name suggests, involves five loans which are referred to as follows: the Linden Loan, the Caroline Arms Loan, the Magnolia Terrace Loan, the Grand Loan, and the Marina Palms Loan (collectively, the "Five Loans").[8] The current complaint in that action alleges that defendant breached: Rep 18 with respect to the Linden Loan, the Caroline Arms Loan, the Magnolia Terrace Loan, and the Grand Loan because the mortgaged properties were encumbered by second mortgages not disclosed in the MLPA's Mortgage Loan Schedule; Rep 10 with respect to each of the Five Loans due to various loan origination and servicing defects; and Rep 7 with respect to the Caroline Arms Loan, the Grand Loan, and the Marina Palms Loan because the borrowers were in material default and/or breach under the documents evidencing or securing the loans as of the closing date.

---

[8] The Linden Loan had an OPB of $4,880,000; the Caroline Arms Loan had an OPB of $5,500,000; the Magnolia Terrace Loan had an OPB of $2,750,000; the Grand Loan had an OPB of $1,200,000; and the Marina Palms Loan had an OPB of $17,480,000.  FLAC ¶ 5.

Because the Magnolia Terrace Loan has been paid in full, plaintiff is no longer pursuing the claims relating to that loan.

## IV.  Alleged Breaches of Section 2.03(b) of the PSA

In addition to the breach claims regarding Reps 18, 10, and 7, plaintiff also claims, in both actions, that defendant breached Section 2.03(b) of the PSA ("Section 2.03(b)").  This section provides, in pertinent part:

> If any Certificateholder, the Master Servicer, the Special Servicer, the Paying Agent, the Custodian or the Trustee discovers . . . or received notice of a . . . breach of any representation or warranty with respect to a Mortgage Loan set forth in, or required to be made with respect to a Mortgage Loan by the Mortgage Loan Seller pursuant to, the Mortgage Loan Purchase Agreement (a "Breach"), which . . . materially and adversely affects the value of such Mortgage Loan, the related Mortgaged Property or the interests of the Trustee or any Certificateholder in the Mortgage Loan or the related Mortgaged Property, such Certificateholder, the Master Servicer, the Special Servicer, the Trustee, the Paying Agent, the Custodian or the Controlling Class Representative . . . shall give prompt written notice of such . . . Breach . . . to the Depositor, the Master Servicer, the Special Servicer, the Mortgage Loan Seller, the Trustee, the Paying Agent, the Custodian and the Controlling Class Representative and shall request in writing that the Mortgage Loan Seller, not later than 90 days after . . . the Mortgage Loan Seller's receipt of such notice . . . , (i) cure such . . . Breach . . . in all material respects, (ii) repurchase the affected Mortgage Loan or

> REO Loan at the applicable Purchase Price
> and in conformity with the Mortgage Loan
> Purchase Agreement and this Agreement or
> (iii) substitute a Qualified Substitute
> Mortgage Loan for such affected Mortgage
> Loan or REO Loan . . . .

PSA § 2.03(b).[9]

Plaintiff asserts two types of breaches regarding Section 2.03(b).  In the current complaints, plaintiff claims that defendant -- the initial Special Servicer for the loans -- breached Section 2.03(b) by failing to provide notice of its own Rep breaches.

In the proposed amended complaints, plaintiff asserts an additional claim for defendant's alleged failure to repurchase the loans after being notified of certain Rep breaches relating to those loans.  Notification regarding the Enco Loan came on February 9, 2012.  On that date, plaintiff notified defendant of a breach of Rep 18 due to the undisclosed second mortgage on the Enco Loan property, and requested that defendant cure or repurchase the loan within 90 days.  Malatak Decl. Ex. A. Defendant refused on the grounds that there was no Rep 18

---

[9] Section 6.5 of the MLPA mirrors the obligations outlined in Section 2.03(b) of the PSA.  It provides, in pertinent part: "Upon notice [of any Breach . . . that materially and adversely affects the value of a Mortgage Loan, the value of the related Mortgage Property or any interest of any Certificateholder in the Mortgage Loan or the related Mortgaged Property], Seller shall, not later than 90 days from the . . . Seller's receipt of the notice . . . , (i) cure such Breach . . . in all material respects, (ii) repurchase the affected Mortgage Loan at the applicable Repurchase Price . . . . or (iii) substitute a Qualified Substitute Mortgage Loan . . . for such affected Mortgage Loan . . . ."  MLPA § 6.5.

breach.  ELPAC ¶ 58; Snyder Decl. Ex. 4 at 3.  Nevertheless, it offered to either discharge the second mortgage or assign it to the Trust.  Id.  Plaintiff rejected both options.

On March 19, 2013, after litigation had already commenced in the Enco Loan Action, plaintiff notified defendant that Reps 18 and 10 were breached with respect to the Five Loans, and demanded that defendant repurchase the loans within 90 days. Malatak Decl. Ex. C.  The notification explained that the properties securing the Five Loans were encumbered by undisclosed second mortgages, thus constituting a breach of Rep 18.  Id.  The notification further explained that the existence of these second mortgages, combined with "the general manner in which the Loans were originated," constituted a breach of Rep 10.  Id.  In its response, defendant denied any such breaches of Reps 18 or 10 and refused to repurchase the loans.  FLPSAC ¶ 144; Snyder Decl. Ex. 6.

## V.  Procedural History

On February 22, 2013, plaintiff filed its original complaint in the Enco Loan Action alleging that defendant breached Rep 18 and Section 2.03(b) by failing to disclose the existence of a second mortgage encumbering the Enco Loan property.  Plaintiff then filed the original complaint in the Five Loans Action on June 20, 2013, asserting claims for breaches of Reps 18 and 10 and Section 2.03(b).  Defendant

moved to dismiss and/or for summary judgment in both actions on October 25, 2013.    On November 15, plaintiff filed its opposition, to which defendant replied on December 13.

However, before the Court could rule on the pending motion, plaintiff filed an amended complaint in the Five Loans Action.    The amended complaint added claims for breach of Rep 7, and revised the Rep 10 claims to allege numerous flaws with the origination and servicing of the loans beyond the fact that there were second mortgages.    Plaintiff then submitted a letter requesting a pre-motion conference to amend its complaint in the Enco Loan action.    The Court held a telephone conference with the parties on January 10, 2014 during which it ordered a new round of briefing to allow plaintiff to move to amend its complaint in the Enco Loan Action and defendant to move to dismiss the amended complaint in the Five Loans Action.

On February 14, 2014, plaintiff moved for leave to file an amended complaint in the Enco Loan Action to add claims for breach of Rep 10 and breach of Section 2.03(b) arising from defendant's failure to cure or repurchase the Enco Loan.

On March 18, 2014, defendant opposed plaintiff's motion for leave to file an amended complaint in the Enco Loan Action

and moved to dismiss the amended complaint in the Five Loans Action.[10]

On April 11, 2014, plaintiff opposed defendant's motion to dismiss the Five Loans Action.  Plaintiff also cross-moved for leave to file a second amended complaint in the Five Loans Action to assert a breach of contract claim arising from defendant's failure to cure or repurchase the loans pursuant to Section 2.03(b).

On May 2, 2014, defendant opposed plaintiff's cross-motion for leave to file a second amended complaint in the Five Loans Action.

**VI.  Defendant's Asserted Grounds for Dismissal and for Denying Plaintiff's Motions to Amend**

Defendant advances seven grounds for dismissing both actions and denying plaintiff's motions to amend: first, that defendant's disclosure of the second mortgages in the COM and other preliminary transactional documents, combined with the inclusion of footnote number 5 in the MLPA's Mortgage Loan Schedule, preclude plaintiff's Rep 18 claims; second, that plaintiff failed to provide defendant with contractually required notice and an opportunity to cure with respect to the alleged Rep breaches that do not relate to the second

---

[10] In its briefing papers, defendant incorporated by reference the briefs it submitted on its earlier motion despite the fact that portions of those briefs were moot or redundant.

mortgages; third, that plaintiff has not adequately alleged that the origination and servicing of the loans were illegal, improper, imprudent, or failed to meet customary industry standards; fourth, that plaintiff's assertion that defendant breached Section 2.03(b) by failing to disclose the various Rep breaches is too conclusory to state a valid claim and, in any case, fails because there were no underlying Rep breaches; fifth, that New York law does not recognize a separate and distinct cause of action premised upon a failure to repurchase loans; sixth, that the Five Loans Action should be dismissed because it was filed after the statute of limitations had expired; and finally, that the proposed amended claims in both actions do not relate back to the original complaints.  We address these arguments, where relevant, below.

**DISCUSSION**

I.   **Legal Standards**

     **A. Motion to Dismiss**

     On a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  ATSI Commc'ns, 493 F.3d at 98; Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).  Nonetheless, "[f]actual allegations must be enough to raise a right of relief above the speculative level, on the

assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). Ultimately, plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. If plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." Id. This pleading standard applies in "all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) (internal quotation marks omitted).

When deciding a motion to dismiss, the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund. Ltd., 493 F.3d 87, 98 (2d Cir. 2007). "Evidence outside these parameters may be introduced in connection with a motion for summary judgment." Hahn v. Rocky Mt. Express Corp., No. 11 Civ. 8512 (LTS)(GWG), 2012 U.S. Dist. LEXIS 100466, at *4 (S.D.N.Y. June 16, 2012).

**B. Motion for Summary Judgment**

A motion for summary judgment is appropriately granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In this context, "[a] fact is 'material'

when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). "In assessing the record to determine whether there is [such] a genuine issue [of material fact] to be tried, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). On a motion for summary judgment, "[t]he moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where that burden is carried, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Id. (citing Anderson, 477 U.S. at 249). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly and Co., 654

F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted).

**C. Motion to Amend**

Rule 15(a)(2) requires that the Court "freely give leave [to amend] when justice so requires." Nonetheless, "it is within the sound discretion of the district court to grant or deny leave to amend." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). Thus, "[l]eave to amend, though liberally granted, may properly be denied for: undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2007). "The futility of an amendment is assessed under the standard for a Rule 12(b)(6) motion to dismiss." Martinez v. Capitol One, N.A., No. 10 Civ. 8028 (RJS), 2014 U.S. Dist. LEXIS 116659, at *5 (S.D.N.Y. Aug. 20, 2014).

Because defendant argues that the claims in plaintiff's proposed amended complaints are futile, the question before the Court is whether these claims would survive a motion to dismiss.

16

## II.  <u>Analysis</u>

### A.  Notice is a Condition Precedent

Defendant argues that the claims in the current and proposed amended complaints that do not relate to the allegedly undisclosed second mortgages should be dismissed because plaintiff failed to provide notice of these claims, and such notice is a condition precedent.

Under New York law, which governs the instant dispute, "a condition precedent is an act or event which must occur before another party's duty to perform its promise arises." <u>LaSalle Bank Nat. Assoc. v. Citicorp Real Estate, Inc.</u>, No. 02 Civ. 7868 (HB), 2003 U.S. Dist. LEXIS 12043, at *14 (S.D.N.Y. July 16, 2003).  "To make a provision in a contract a condition precedent, it must appear from the contract itself that the parties intended the provision so to operate." <u>Torres v. D'Alesso</u>, 80 A.D.3d 46, 57 (N.Y. App. Div. 2010) (quoting 22 N.Y. Jur. 2d, Contract § 262).  "[A] contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition." <u>Unigard Sec. Ins. Co. v North Riv. Ins. Co.</u>, 79 N.Y.2d 576, 581 (N.Y. 1992).  "The interpretive preference favoring construction of contractual language as embodying a promise or a constructive condition rather than an express condition, however, cannot be employed if the occurrence of the

event as a condition is expressed in unmistakable language, or where the event is within the obligee's control or the circumstances indicate that it has assumed the risk." <u>Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Capital</u>, No. 11 Civ. 0505 (CM)(GWG), 2013 U.S. Dist. LEXIS 87863, at *44-45 (S.D.N.Y. June 19, 2013) (internal quotation marks omitted).

Section 2.03(b) of the PSA sets forth plaintiff's obligation to provide notice of a Rep breach. It reads, in pertinent part: "If . . . [plaintiff] discovers . . . or received notice of a breach of any representation or warranty . . . [it] <u>shall</u> give prompt written notice of such . . . Breach . . . to . . . [defendant] . . . and <u>shall</u> request in writing that [defendant], not later than 90 days after . . . [defendant's] <u>receipt</u> of such notice . . . , (i) cure such . . . Breach . . . , (ii) repurchase the affected Mortgage Loan . . . or (iii) substitute a Qualified Substitute Mortgage Loan . . . ." PSA § 2.03(b) (emphasis added). Thus, Section 2.03(b) clearly states that plaintiff must provide defendant with written notice of any Rep breach, and must allow defendant 90 days after it receives such notice to implement one of the three remedy options.[11]

---

[11] However, Section 2.03(b) provides that "in no event shall any such substitution occur on or after the second anniversary of the Closing Date." PSA § 2.03(b).

Defendant's obligation to remedy a Rep breach is therefore conditioned upon the receipt of plaintiff's notice. Section 6.5 of the MLPA confirms this point. It reads, in pertinent part: "<u>Upon notice</u> [of any Breach], [defendant] shall, not later than 90 days from . . . [defendant's] <u>receipt</u> of the notice . . . , (i) cure such Breach . . ., (ii) repurchase the affected Mortgage Loan . . . or (iii) substitute a Qualified Substitute Mortgage Loan . . . ." MLPA § 6.5 (emphasis added). Thus, there is no question that notice is required before defendant is bound to remedy a Rep breach. Had the parties intended otherwise, they certainly knew how to say so. Section 6.5 of the MLPA and Section 2.03(b) of the PSA condition defendant's obligation to remedy a different type of breach -- one not at issue in this litigation -- on defendant's receipt of notice <u>or</u> its own discovery of the breach. <u>See</u> MLPA § 6.5; PSA § 2.03(b)(ii).

The fact that defendant's obligation to remedy a Rep breach is triggered exclusively by receipt of notice, and not also by discovery, is significant. Indeed, in other CMBS cases, courts have distinguished between these two types of obligations: those that are triggered <u>only</u> by receipt of notice have been found to constitute a condition precedent, <u>see, e.g.</u>, <u>Bank of N.Y. Mellon Trust Co.</u>, 2013 U.S. Dist. LEXIS 87863, at *46; <u>Morgan Guar. Trust Co. v. Bay View Franchise Mortg.</u>

Acceptance Co., No. 00 Civ. 8613 (SHS), 2002 U.S. Dist. LEXIS 7572, at *15 (S.D.N.Y. Apr. 23, 2002); whereas those that are triggered by either receipt of notice or discovery have not, see, e.g., Trust for Certificate Holders of Merrill Lynch Mortg. Passthrough Certificates Series 1999-Cl v. Love Funding Corp., No. 04 Civ. 9890 (SAS), 2005 U.S. Dist. LEXIS 23522, at *32 (S.D.N.Y. 2005); LaSalle Bank, 2003 U.S. Dist. LEXIS 12043, at *14-15.

Although "courts have declined to find that a notice requirement is a condition precedent when the [remedy obligation] can be triggered by something other than a notice, or where the [remedy] provisions and notice provisions do not expressly refer to each other," U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts., No. 12 Civ. 9412 (SAS), 2014 U.S. Dist. LEXIS 93543, at *17 (S.D.N.Y. July 9, 2014) (internal quotation marks omitted), neither scenario is present here. Therefore, while it is true that the law prefers interpreting a contractual condition as a promise, rather than a condition precedent, that preference is inapplicable in this case since defendant's obligation to cure, repurchase, or substitute is unmistakably triggered solely by the receipt of notice. See Nat'l Fuel Gas Distribution Corp. v. Hartford Fire Ins. Co., 814 N.Y.S.2d 436, 437 (N.Y. App. Div. 2006).

Furthermore, the fact that the PSA and MLPA allow defendant three options for remedying a Rep breach supports the conclusion that notice is a prerequisite to bringing suit. If plaintiff could file a lawsuit to obtain the repurchase of a loan without first providing defendant 90 days' notice, it would deprive defendant of its right to cure the underlying breach or substitute a different loan, both of which could be far more cost-effective than repurchasing. Construing the notice requirement as a condition precedent prevents this situation and preserves defendant's ability to choose the remedy. Cf. Bank of N.Y. Mellon Trust Co., 2013 U.S. Dist. LEXIS 87863, at *45 (holding notice to be a condition precedent where defendant was required to repurchase loan only after breach could not be cured within 90 days of notice being sent).

Plaintiff's reliance on the last sentence of Section 2.03(b) to avoid a finding of a condition precedent is misplaced. That sentence reads: "Notwithstanding anything contained in this Agreement or the Mortgage Loan Purchase Agreement, no delay in either the discovery of a . . . Breach or delay on the part of any party to this Agreement in providing notice of such . . . Breach shall relieve [defendant] of its obligation to repurchase if it is otherwise required to do so under the Mortgage Loan Purchase Agreement and/or this Agreement." PSA § 2.03(b). Contrary to plaintiff's

contention, this provision does not excuse a failure to provide notice of a Rep breach.  Rather, it merely excuses a failure to provide prompt notice of such a breach.  This is a critical difference, one that distinguishes the PSA here from the PSA at issue in <u>LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.</u>, No. 00 Civ. 8720 (NRB), 2004 U.S. Dist. LEXIS 18599 (S.D.N.Y. Sept. 13, 2004), upon which plaintiff relies.[12]

Therefore, in sum, we hold that the notice provisions in the PSA and MLPA constitute a condition precedent such that written notice is required for each breach that is alleged.[13] Consequently, the only claims plaintiff may assert in this litigation are those of which it provided notice to defendant. Although neither the PSA nor MLPA explain what the required notice must include, "[i]t is settled law . . . that the notice must be specific enough so as to give the other party a reasonable opportunity to cure the breach if this can be done." <u>Ulla-Maija, Inc. v. Kivimaki</u>, No. 02 Civ. 3640 (TPG), 2005 U.S. Dist. LEXIS 22249, at *11 (S.D.N.Y. Sept. 30, 2005).

---

[12] The PSA in <u>Lasalle</u> provided: "The Servicer, Special Servicer or the Trustee shall notify the Mortgage Loan Seller and the Depositor upon such party's becoming aware of any breach of the representations and warranties contained in this Agreement or the Mortgage Loan Purchase and Sale Agreement that gives rise to a cure or repurchase obligation; provided, that the <u>failure</u> of the Servicer, the Special Servicer or Trustee to give such notification shall not constitute a waiver of any cure or repurchase obligation." <u>LaSalle</u>, 2004 U.S. Dist. LEXIS 18599, at *19 (emphasis added).
[13] <u>See</u> PSA § 2.03(b) (requiring plaintiff, upon discovering or receiving notice of a breach, to "give prompt written notice of <u>such</u> . . . Breach") (emphasis added); MLPA § 6.5 (requiring defendant, upon receiving notice of any breach, to, inter alia, "cure <u>such</u> Breach") (emphasis added).

## B. The Notices Provided by Plaintiff

As discussed previously, plaintiff sent defendant two notices of breach, one on February 9, 2012 relating to the Enco Loan and another on March 19, 2013 relating to the Five Loans. The Enco Loan notice claimed that defendant breached Rep 18 by not properly disclosing the second mortgage on the Enco Loan property. Malatak Decl. Ex. A. The Five Loans notice similarly focused on allegedly undisclosed second mortgages. Specifically, it stated that the existence of such mortgages on the Five Loans properties, as well as "the general manner in which the Loans were originated," constituted breaches of Reps 18 and 10. Malatak Decl. Ex. C. Although the Five Loans notice claimed breaches of Reps 18 and 10, plaintiff concedes that these breaches were both "based upon the Undisclosed Seconds."[14] Pl. Opp. at 5.

Thus, the only breaches of which defendant was notified -- and for which it may be held liable in this litigation -- were those relating to the allegedly undisclosed second mortgages.[15]

---

[14] Even without this concession, we would nonetheless find that the notice was limited to the second mortgage issue. The passing reference to a problem with "the general manner in which the Loans were originated" is too vague to provide adequate notice of a Rep 10 breach.

[15] Plaintiff's argument that it did not need to send notice of the other alleged breaches when it later discovered them -- because defendant had already declined to repurchase the loans after receiving notice of the earlier alleged breaches and because litigation had already commenced -- is unavailing. Plaintiff may not escape the notice requirement merely because it assumed, based on defendant's responses to earlier, unrelated breach allegations, that defendant would have refused to repurchase the loans. A

Consequently, the Rep 7 claims are dismissed, as are the Rep 10 and Section 2.03(b) claims to the extent they rely on allegations unrelated to the second mortgages. Similarly, all claims in the proposed amended complaints that do not relate to the second mortgages are futile.[16]

## C. Claims Based on Allegedly Undisclosed Second Mortgages

### i.  Rep 18

Defendant warranted in Rep 18 that: "No Mortgaged Property secures any mortgage loan not represented in the Mortgage Loan Schedule; . . . [N]o mortgaged loan is secured by property that secures another mortgage loan other than one or more Mortgage Loans as shown on the Mortgage Loan Schedule." MLPA Ex. B ¶ 18. Plaintiff claims that defendant breached this Rep by failing to properly disclose the existence of second mortgages on five mortgaged properties (those securing the Enco Loan, Linden Loan, Caroline Arms Loan, Magnolia Terrace Loan, and Grand Loan). Defendant moves for summary judgment on these

---

condition precedent is controlling regardless of how futile or unnecessary a party believes it to be.

[16] On August 20, 2014, after oral argument was held and well after briefing on the pending motions was complete, plaintiff sent defendant a notice letter regarding all the breaches alleged in the present actions that were not mentioned in the original notice letters. Plaintiff then submitted a copy of the letter to the Court and requested that it be considered in connection with the pending motions. We refuse to consider the letter here because: (1) defendant is entitled to a 90-day remedy period; (2) the letter was submitted several months after the briefing deadline; and (3) notice of breach is a condition precedent to commencing litigation, and when the instant litigation was commenced, plaintiff had not sent this letter. Additionally, we are far from persuaded that, in the absence of any conduct by defendant inhibiting plaintiff from sending the notice letter within the statute of limitations period, the breach claims are timely.

24

claims, arguing that the second mortgages were adequately disclosed through the inclusion of footnote number 5 in the MLPA's Mortgage Loan Schedule and the detailed discussion of these mortgages in the COM and other preliminary transactional documents.  Alternatively, defendant contends that plaintiff waived the Rep 18 breach, and that any such breach should be excused as a mutual mistake or scrivener's error.

As explained below, we find three separate grounds for granting summary judgment on the Rep 18 claims.

### a. Rep 18 was not Breached

As an initial matter, it is important to note that Rep 18 does not state that there are no second mortgages.  Nor does it state that there may be second mortgages.  Rather, it states unequivocally that there are second mortgages on "one or more Mortgage Loans."  Thus, anyone relying on Rep 18 is forewarned that at least one of the Trust's mortgaged properties is encumbered by a second mortgage.

Defendant intended to disclose detailed information about the second mortgages in footnote 5 of the Mortgage Loan Schedule, the same footnote where this information is disclosed in the COM.  However, due to a clerical error by defendant and/or Morgan Stanley, the second mortgage information -- which is disclosed in multiple locations in the COM -- was not pasted

into the text of footnote 5.[17]   Thus, footnote 5 was left
conspicuously blank.   The same error also affected several
other footnotes.  McClernan Decl. ¶¶ 15, 25.

Despite this error, we nonetheless conclude that the
presence of a blank footnote number 5, combined with the
language of Rep 18 and the disclosure of the second mortgages
in the COM, is sufficient to satisfy defendant's disclosure
obligations under Rep 18.   Taken together, these data points
adequately reveal the existence of the second mortgages without
requiring any due diligence.   Indeed, Rep 18 provides notice
that second mortgages exist on one or more mortgaged properties
and that information about these mortgages are provided in the
Mortgage Loan Schedule.   The Mortgage Loan Schedule is missing
this information, but the reason why is obvious from the
numerous footnotes with no corresponding text.   The blank
footnotes alert any reasonable reader to the absence of
intended information, which, based on the language of Rep 18,
includes second mortgage data.   A reader need only use his
common sense to find the missing information in the parallel
Mortgage Loan Schedule attached to the COM.   Although the MLPA
contains a "no due diligence" clause (MLPA § 6.3) -- which
provides that a party's due diligence will not absolve

---

[17] As plaintiff concedes, there is no evidence suggesting that the omission
of the second mortgage information from footnote 5 was intentional.  Tr. 3.

defendant of liability for breaching a Rep -- that clause is not a license to abandon common sense or ignore what is obvious in the MLPA and COM.

### b. Any Breach is Waived

Regardless, even assuming that defendant breached Rep 18, plaintiff waived the breach because it knew about and accepted the breach before entering into the contract.  The Second Circuit has explained that under New York law, "where the seller discloses up front the inaccuracy of certain of his warranties, it cannot be said that the buyer . . . believed he was purchasing the seller's promise as to the truth of the warranties."  Rogath v. Siebenmann, 129 F.3d 261, 265 (2d Cir. 1997).  "In that situation, unless the buyer expressly preserves his rights under the warranties, we think the buyer has waived the breach."  Id. at 264 (internal quotation marks and alterations omitted); see also Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 186 (2d Cir. 2007) ("[W]here the seller has disclosed at the outset facts that would constitute a breach of warranty, that is to say, the inaccuracy of certain warranties, and the buyer closes with full knowledge and acceptance of those inaccuracies, the buyer cannot later be said to believe he was purchasing the seller's promise respecting the truth of the warranties.").

The inaccuracy of Rep 18 is obvious from the face of the MLPA. Indeed, while the Rep states that there are no second mortgages except those on "one or more Mortgage Loans as shown on the Mortgage Loan Schedule," the Mortgage Loan Schedule identifies no mortgage loans with second mortgages. Thus, the inaccuracy of Rep 18 is "disclose[d] up front." Rogath v. Siebenmann, 129 F.3d at 265. Consequently, because "it cannot be said that [plaintiff] believed [it] was purchasing [defendant's] promise as to the truth of [Rep 18]," it waived the breach. Id. Moreover, plaintiff cannot seek refuge from this waiver in the "no due diligence clause." That clause does not preserve the right to sue for a breach of warranty when the inaccuracy of the warranty is clear from the face of the contract.

### c. Reformation of the MLPA is Warranted

Plaintiff's Rep 18 claims are based on nothing more than a scrivener's error that was obvious to all. "Under New York law, the doctrine of scrivener's error allows contracts to be reformed when there is a mistake in the writing that memorialized the contract. Where there is no mistake about the agreement and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected." In re Am. Home Mortg. Inv. Trust 2005-2, No. 14 Civ. 2494 (AKH),

2014 U.S. Dist. LEXIS 111867, at *56-57 (S.D.N.Y. July 24, 2014) (internal quotation marks omitted).  In order to reform a contract, a scrivener's error must be shown by "clear and convincing evidence."  Id.

The clear and convincing evidence here -- including the affidavit testimony of Sovereign employee James McClernan,[18] the blank footnote 5 in the Mortgage Loan Schedule, and the disclosure of the second mortgages in footnote 5 of the COM, pre-COM, and COM disk -- demonstrates that the omission of the second mortgage data in the Mortgage Loan Schedule was a clerical error that neither defendant nor Morgan Stanley -- the parties to the MLPA -- intended.  See In re Am. Home Mortg. Inv. Trust 2005-2, No. 14 Civ. 2494 (AKH), 2014 U.S. Dist. LEXIS 111867, at *57 (S.D.N.Y. July 24, 2014) (holding that a "scrivener's error was proved clearly and convincingly . . . from the Offering Documents, the Indenture itself, and the drafting history of the documents").

Because Morgan Stanley, which helped prepare and draft the MLPA and COM (McClernan Decl. ¶¶ 4-6, 8), knew about the second mortgages and failed to correct the footnote mistake, it would be subject to a scrivener's error defense if it attempted to

---

[18] McClernan, who was involved in the CMBS transaction, stated that defendant and Morgan Stanley meant to include the text of the missing footnotes in the Mortgage Loan Schedule just as they included them in the COM, pre-COM, and COM disk.  McClernan Decl. ¶¶ 15, 25.

claim a breach of warranty.  As Morgan Stanley's assignee, plaintiff is therefore subject to the same defense.  See Krys v. Aaron (In re Refco Inc. Secs. Litig.), 890 F. Supp. 2d 332, 354 (S.D.N.Y. 2012) ("an assignee stands in the shoes of the assignor and thus acquires no greater rights than its assignor" (internal quotation marks omitted)); Hyosung Am. v. Sumagh Textile Co., 94 Civ. 0568 (SAS), 1996 U.S. Dist. LEXIS 12829, at *30 (S.D.N.Y. Aug. 30, 1996) (noting that "Orkid's knowledge was imputed to Hyosung by virtue of their assignor/assignee relationship" and "Orkid's knowledge . . . barred Hyosung's claims against Sumagh"); Persky v. Bank of America Nat'l Ass'n, 261 N.Y. 212, 220 (N.Y. 1933) ("It is too well established to require argument that ordinarily the assignee of an instrument which is not negotiable takes title subject to all equities and defenses which could be urged against his assignor."); Losner v. Cashline, L.P., 303 A.D.2d 647, 648 (N.Y. App. Div. 2003) ("an assignee of a mortgage takes subject to any defense that would have prevailed against its assignor").

Assignee status aside, plaintiff and the certificateholders were independently informed that the omission of the second mortgage data in the Mortgage Loan Schedule was a clerical error.  Rep 18 alerts parties to the existence of second mortgages and states that these mortgages are shown in the Mortgage Loan Schedule.  Although second

30

mortgage data is not listed there, several footnotes -- which are logical places to insert this data -- are left blank. Because blank footnotes serve no purpose, their presence indicates that the absence of second mortgage data is the result of a mistake.  That conclusion is confirmed by a cursory review of the Mortgage Loan Schedule attached to the COM, which discloses the second mortgage data in footnote 5.

Thus, there is no question that all parties knew there were second mortgages and expected them to appear in the Mortgage Loan Schedule.  Under these circumstances, reformation of the Mortgage Loan Schedule to include the missing footnote 5 text is warranted.

### ii.  Rep 10

Plaintiff claims that defendant breached Rep 10 by extending mortgage loans on properties that were encumbered by second mortgages, which made the loans too risky.  Pl. Opp. at 15.  Plaintiff contends that this was not "proper and prudent and [did not meet] customary industry standards."  Id.; MLPA Ex. B ¶ 10.  Leaving aside the fact that plaintiff does not cite a single law or industry standard that prohibits this relatively common practice, it waived this alleged breach because the existence of at least one second mortgage was disclosed by Rep 18.  Thus, assuming arguendo that the existence of a second mortgage is a breach of Rep 10, such

31

breach was, as discussed above, "disclose[d] up front," <u>Rogath</u>
<u>v. Siebenmann</u>, 129 F.3d at 265, and is therefore waived.[19]

## CONCLUSION

For the foregoing reasons, we grant defendant's motion to
dismiss and for summary judgment and deny plaintiff's motions
to amend the complaints.


Dated:     New York, New York
           September 8, 2014

                                        NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE

---

[19] Because we hold that defendant did not breach Reps 18 or 10, the current
and proposed Section 2.03(b) claims, which are predicated on the existence
of a Rep breach, must be dismissed and deemed futile, respectively.

Copies of the foregoing Memorandum and Order have been mailed
on this date to the following:

## Attorneys for Plaintiff

Timothy J. Pastore, Esq.
Duval & Stachenfeld LLP
555 Madison Avenue, 6th Floor
New York, NY 10022

Paul D. Snyder, Esq.
Bradley C. Mirakian, Esq.
Snyder Law Firm LLC
13401 Mission Road, Suite 207
Leakwood, KS 66209

## Attorney for Defendant

Robert J. Malatak, Esq.
Stephen J. Grable, Esq.
Annie P. Kubic, Esq.
Hahn & Hessen LLP
488 Madison Avenue, 15th Floor
New York, NY 10022